**WAL–MART STORES, INC. et al, Appellants,**

v.

**Jeremiah McKENZIE, Appellee.**

**No. 11–96–275–CV.**

Court of Appeals of Texas, Eastland.

Sept. 10, 1998.

**365**

OPINION

DICKENSON, Justice.

Jeremiah McKenzie sued his former employer, Wal–Mart Stores, Inc., and one of its managers, Rick Rumfelt. The jury resolved the disputed fact issues by finding that Wal–Mart had committed an unlawful employment practice (firing McKenzie "because of race") and that Rumfelt had slandered McKenzie (by saying that McKenzie "committed theft"). The trial court rendered judgment on the jury's verdict that McKenzie recover from Wal–Mart for the unlawful employment practice: $50,000 plus prejudgment interest for loss of earnings, $10,000 plus prejudgment interest for mental anguish, $5,000 plus prejudgment interest for damage to his credit reputation, $250,000 for punitive damages, and $141,975 for attorneys' fees. The trial court also rendered judgment on the verdict that McKenzie recover $500 plus prejudgment interest for slander by Rumfelt. Both defendants appeal. The judgment of the trial court is affirmed.

### Background Facts

McKenzie went to work for Wal–Mart at its store in Palestine in 1989. He worked part-time while he was in high school, and he worked full-time after he graduated. McKenzie was promoted to assistant manager of the TBA ("tires, batteries, and accessories") department at Palestine. In November of 1991, McKenzie was transferred, and he became manager of the TBA department at the North Tyler store. That department had not done well before McKenzie became manager. Under his management, the department improved, and McKenzie received favorable evaluations from his supervisor. McKenzie also testified that he "loved" working at Wal–Mart and that he planned to make it his career.

McKenzie testified that the TBA department at the North Tyler store was in "terrible" condition when he arrived. He replaced the prior manager, Kenneth French, who was demoted and assigned to work under

J. Preston Wrotenbery, Kevin D. Jewell, Magenheim, Bateman, Robinson, Wrotenbery & Helfand, Houston, for Appellants.

James D. Hankins, Palestine, M. Keith Dollahite, Ritcheson & Dollahite, Tyler, for Appellee.

Before DICKENSON and WRIGHT, JJ., and McCLOUD, Senior Justice.[1]

---

1. Austin McCloud, Retired Chief Justice, Court of Appeals, 11th District of Texas at Eastland sitting

by assignment.

McKenzie. French did not think that he should have been demoted, and he resented the fact that McKenzie was brought in to replace him. Cathy Laughlin was another former manager in the TBA department at the North Tyler store, and her attitude toward McKenzie was "very negative." McKenzie said that Laughlin told him that she "wasn't going to take any orders from *a young black person.*" (Emphasis added)

McKenzie said that he complained about Laughlin to his supervisor, Rumfelt. After that, his relationship with Laughlin got worse, and she told him that she was going to get rid of him. McKenzie said the relationship between Laughlin and Rumfelt was "very close" and that the two of them would laugh, joke, and go to the snack bar together. McKenzie testified that, during one of his evaluations, Rumfelt told him that: "You're going to have to do whatever I say because *you're the black sheep of the family.*" (Emphasis added)

The record also shows that portions of a videotaped deposition by Tammy Price were read to the jury. She was a Wal–Mart employee; she testified that she heard Robert Cluff, another TBA department manager for Wal–Mart at a different store, make the statement about McKenzie that "[w]e finally got rid of that *nigger.*" (Emphasis added) The court reporter did not transcribe this portion of the testimony when the videotape was played for the jury, and the videotape is not in the record which was filed with this court.

McKenzie was discharged on March 9, 1992, and he filed a "Charge of Discrimination" with the Texas Commission on Human Rights. On February 12, 1993, the Commission sent McKenzie a "Notice of Right to File" a lawsuit pursuant to the Texas Commission on Human Rights Act. See former TEX.REV.CIV.STAT. art. 5221k, § 7.01, now codified in TEX. LABOR CODE ANN. § 21.252 (Vernon 1996). McKenzie was later hired by his former manager at the Wal–Mart store in Palestine; he was fired on June 28, 1994, after the area supervisor learned that McKenzie had been hired. There was no complaint filed with the Texas

Commission on Human Rights in connection with the second firing.

### The Jury's Verdict

Omitting the instructions and definitions, the questions which were answered by the jury and the jury's answers may be summarized as shown:

(1) Did Wal–Mart Stores, Inc. commit an unlawful employment practice against Jeremiah McKenzie? *Yes* What sum of money, if any, paid now in cash, would fairly and reasonably compensate Jeremiah McKenzie for damages he received, if any? Past loss of earnings, *$50,000.00;* Future loss of earnings, *$ 0.00;* Past mental anguish *$10,000.00;* Future mental anguish, *$0.00;* Past loss of credit reputation, *$5,000.00;* Future loss of credit, *$0.00;* and Legal Services for trial and appeal, *$141,975.00.*

(2) Did Wal–Mart Stores, Inc. engage in unlawful intentional discrimination? *Yes* What sum of money, if any, should be assessed against Rick Rumfelt and Wal–Mart Stores, Inc. as exemplary damages? Rick Rumfelt, *$0.00;* Wal–Mart Stores, Inc., *$250,000.00.*

(5) Do you find from a preponderance of the evidence that Rick Rumfelt or Wal–Mart Stores, Inc. slandered Jeremiah McKenzie by publishing that he committed theft? Rumfelt, *Yes;* Wal–Mart Stores, Inc., *No.* What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Jeremiah McKenzie for his injuries, if any, resulting from the publication in question? Past mental anguish, embarrassment, and humiliation? *$250.00;* Past injury to his character reputation? *$250.00;* All other elements submitted? *$0.00.* What sum of money, if any, should be assessed as exemplary damages for the conduct found in response to Question No. 5? *$0.00.*

### The Trial Court's Judgment

The trial court entered judgment on the jury's verdict that McKenzie should recover the following damages from Wal–Mart Stores, Inc.: (a) damages for "back pay" in the sum of $50,000.00 plus prejudgment in-

terest; (b) mental anguish in the past in the sum of $10,000 plus prejudgment interest; and (c) loss of credit reputation in the past in the sum of $5,000 plus prejudgment interest. The trial court also entered judgment on the jury's verdict that McKenzie should recover "exemplary" damages in the sum of $250,000 and attorneys' fees in the sum of $141,975 from Wal–Mart Stores, Inc. The trial court entered judgment on the jury's verdict that McKenzie should also recover $500 plus prejudgment interest from Rumfelt.

## Points of Error

Appellants present these seven points of error:

(1) McKenzie is barred by statute from recovering exemplary damages because the controlling version of the Texas Commission on Human Rights Act, former Article 5221k, does not allow recovery of exemplary damages.

(2) Alternatively, the exemplary damages award is not supported by legally sufficient evidence or is against the great weight and preponderance of the evidence because there is a complete absence of malice on the part of the decision-maker.

(3) The jury's award of attorney's fees must be reversed because ... the award is not supported by legally or factually sufficient evidence [and is] patently excessive.

(4) The judgment must be reversed and rendered on the discrimination and retaliation claims because there is no evidence, or factually insufficient evidence, that Wal–Mart committed an unlawful employment practice against McKenzie.

(5) The trial court erred in failing to grant Wal–Mart's motion for judgment notwithstanding the verdict regarding the mental anguish damages because such damages are not allowed under [former] Article 5221k and, alternatively, McKenzie failed to present legally sufficient evidence of mental anguish.

(6) This court must reverse the damages awarded for loss of credit because such damages are not allowed under [former] Article 5221k and, alternatively, are not supported by legally or factually sufficient evidence.

(7) The trial court abused its discretion by admitting over objection the hearsay statement of Robert Cluff because the statement has no probative value and is extremely prejudicial.

## Exemplary Damages

■ We agree with McKenzie that Wal–Mart failed to preserve error on the complaint urged in its first point of error because that complaint was not urged prior to the submission of the court's charge to the jury. TEX.R.CIV.P. 274 provides that a party objecting to the charge to the jury "must point out distinctly the objectionable matter and the grounds of the objection" and that any complaint to the charge "is waived unless specifically included in the objections."

See and compare *General Chemical Corporation v. De La Lastra*, 852 S.W.2d 916, 920–921 (Tex.1993); *Wal–Mart Stores, Inc. v. Holland*, 956 S.W.2d 590, 600 (Tex.App.—Tyler 1997), *pet'n den'd per curiam*, 41 Tex. Sup.Ct.J. 717, —— S.W.2d ——, 1998 WL 207905 (April 30, 1998); *Cross Marine, Inc. v. Lee*, 905 S.W.2d 22, 25 (Tex.App.—Corpus Christi 1995, writ den'd); *Qualicare of East Texas, Inc. v. Runnels*, 863 S.W.2d 220, 225 (Tex.App.—Eastland 1993, writ dism'd); *Lakeway Land Company v. Kizer*, 796 S.W.2d 820, 825 (Tex.App.—Austin 1990, writ den'd).

The Supreme Court held in *De La Lastra* that "General Chemical was obligated to object to jury questions on such damages in order to preserve error." *General Chemical Corporation v. De La Lastra, supra* at 921. The Supreme Court held in *Holland,* 41 Tex. Sup.Ct.J. supra at 717, at ——, that Wal–Mart "failed to preserve error properly." While that case is still pending on motion for rehearing in the Supreme Court, we note that the Tyler Court of Appeals held that Wal–Mart "waived error in the submission" of the court's charge by failing to object. *Wal–Mart Stores, Inc. v. Holland, supra* at 600. The Corpus Christi Court of Appeals held in *Cross Marine* that appellant "did not timely present its complaint to the trial court at the charge conference." Even though it raised the issue in response to the other party's motion for entry of judgment, this

was too late. *Cross Marine, Inc. v. Lee, supra* at 26. This court held in *Qualicare* that appellants had waived their contentions because they "did not object at trial to the jury charge." *Qualicare of East Texas, Inc. v. Runnels, supra* at 225. The Austin Court of Appeals held in *Lakeway Land Company* that "a party is confined to the jury-instruction objection made at trial; any variant complaint on appeal is waived." *Lakeway Land Company v. Kizer, supra* at 825. The first point of error is overruled.

### Evidence of Malice

 The court reporter did not transcribe all of the questions and answers in the videotaped depositions of Price and French which were seen and heard by the jury, and those videotapes are not in the record furnished to this court. The Supreme Court announced the controlling rule in *Englander Co. v. Kennedy*, 428 S.W.2d 806, 807 (Tex.1968), when it said:

> When the complaint is that the evidence is factually or legally insufficient to support vital findings of fact, or that the evidence conclusively refutes vital findings, this burden cannot be discharged in the absence of a complete or an agreed statement of facts.

The second point is overruled.

### Attorneys' Fees

We overrule the third point of error insofar as it argues that the award of $141,-975 as attorneys' fees is excessive. *Englander Co. v. Kennedy, supra*. Moreover, the record contains evidence which is legally and factually sufficient to support the amount of attorneys' fees found by the jury. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

### Evidence of Unlawful Employment Practice

The record contains circumstantial evidence that Wal-Mart management was involved in terminating the employment of McKenzie at least in part because of his race. While Wal-Mart denied this charge and produced evidence that McKenzie was discharged for "theft," the jury resolved this disputed fact issue by accepting McKenzie's testimony and rejecting Wal-Mart's explanation for his termination. The court reporter did not transcribe all of the questions and answers in the videotaped depositions which were shown to the jury, and those videotapes are not in the record furnished to this court. Consequently, Wal-Mart cannot discharge its appellate burden of showing that the evidence was legally and factually insufficient to support the jury's finding that Wal-Mart engaged in unlawful, intentional discrimination against McKenzie. *Englander Co. v. Kennedy, supra*. The fourth point of error is overruled.

### Mental Anguish and Loss of Credit

Wal-Mart argues in its fifth and sixth points of error that damages for mental anguish and loss of credit are not allowed by former Article 5221k. We overrule these points of error for the reasons stated in our discussion of Points of Error Nos. 1 and 2.

### Statement of Robert Cluff

Wal-Mart argues in its final point that the trial court abused its discretion in admitting the "hearsay" statement of Robert Cluff. This statement was not hearsay. It was an operative fact. It was not offered into evidence to "prove the truth of the matter asserted." TEX.R.CIV.EVID. 801(d). We overrule Point of Error No. 7.

### This Court's Ruling

The judgment of the trial court is affirmed.