**WAL–MART STORES, INC.,
et al., Appellants,**

v.

**Jeremiah McKENZIE, Appellee.**

No. 11–96–00275–CV.

Court of Appeals of Texas,
Eastland.

April 27, 2000.

J. Preston Wrotenbery, Kevin D. Jewell, Magenheim Bateman Robinson Wrotenbery & Helfand, Houston, for Appellants.

James D. Hankins, Palestine, Keith Dollahite, Ritcheson & Dollahite, Tyler, for Appellee.

Panel consists of: WRIGHT, J., and McCLOUD, S.J.,* and DICKENSON, S.J.**

## OPINION

BOB DICKENSON, Senior Justice, (Retired).

### ON REMAND

Jeremiah McKenzie sued his former employer, Wal–Mart Stores, Inc., and one of its managers, Rick Rumfelt. The jury resolved the disputed fact issues by finding that Wal–Mart had committed an unlawful employment practice (firing McKenzie "be-

---

\* Austin McCloud, Retired Chief Justice, Court of Appeals, 11th District of Texas at Eastland sitting by assignment.

\*\* Bob Dickenson, Retired Justice, Court of Appeals, 11th District of Texas at Eastland sitting by assignment.

**568**

cause of race") and that Rumfelt had slandered McKenzie (by saying that McKenzie "committed theft"). The trial court rendered judgment on the jury's verdict that McKenzie recover the following damages from Wal–Mart for its unlawful employment practice: $50,000 plus prejudgment interest (for loss of earnings), $10,000 plus prejudgment interest (for mental anguish), $5,000 plus prejudgment interest (for damage to his credit reputation), $250,000 (as punitive damages), and $141,975 (for attorney's fees). The trial court also rendered judgment on the verdict that McKenzie recover $500 plus prejudgment interest from Rumfelt for slander. Both defendants appeal.

On September 10, 1998, this court affirmed the judgment of the trial court. On August 26, 1999, the Supreme Court of Texas reversed the judgment of this court and remanded the cause to this court. See *Wal–Mart Stores, Inc. v. McKenzie*, 979 S.W.2d 364 (Tex.App.—Eastland 1998), *rev'd*, 997 S.W.2d 278 (Tex.1999). We will discuss all of appellants' points of error as stated in their "Amended Brief After Remand."

*Background Facts*

McKenzie went to work for Wal–Mart at its store in Palestine in 1989. He worked part-time while he was in high school, and he worked full-time after he graduated. McKenzie was promoted to assistant manager of the TBA ("tires, batteries, and accessories") department at Palestine. In November of 1991, McKenzie was transferred to Tyler, and he became the manager of the TBA department at the North Tyler store. That department had not done well before McKenzie became manager. Under his management the department improved, and McKenzie received favorable evaluations from his supervisor. McKenzie testified that he "loved" working at Wal–Mart and that he planned to make it his career.

McKenzie also testified that the TBA department at the North Tyler store was in "terrible" condition when he arrived. McKenzie replaced the prior manager, Kenneth French, who was demoted and assigned to work under McKenzie. French did not think that he should have been demoted, and he resented the fact that McKenzie was brought in to replace him. Cathy Laughlin was another former manager of the TBA department at the North Tyler store, and her attitude toward McKenzie was "very negative." McKenzie testified that Laughlin told him that she "wasn't going to take any orders from *a young black person.*" (Emphasis added)

McKenzie testified that he complained about Laughlin to his supervisor, Rumfelt. After that, his relationship with Laughlin got worse, and she told him that she was going to get rid of him. McKenzie said that the relationship between Laughlin and Rumfelt was "very close" and that the two of them would laugh, joke, and go to the snack bar together. McKenzie testified that, during one of his evaluations, Rumfelt told him that: "You're going to have to do whatever I say because *you're the black sheep of the family.*" (Emphasis added)

The record also shows that portions of a videotaped deposition by Tammy Price were shown to the jury. Price was a Wal–Mart employee who testified that she heard Robert Cluff, a TBA department manager for Wal–Mart at a different store, make the statement about McKenzie that: "We finally got rid of that *nigger.*" (Emphasis added) The court reporter did not transcribe any of the questions and answers which were seen and heard by the jury when the videotaped depositions were played for the jury, and the videotapes are not in the record which was filed with this court. Other portions of the record show what Price said about Cluff's statement.

McKenzie was discharged on March 9, 1992, and he filed complaints with the Texas Commission on Human Rights and also with the Equal Employment Opportunity Commission of the federal government.

Both Commissions issued "right to sue" letters.

### The Jury's Verdict

The questions which were answered by the jury, and the jury's answers, can be summarized as shown:

(1) Wal–Mart committed "an unlawful employment practice" against McKenzie, and the following sums of money would fairly and reasonably compensate him for damages he received:

Past loss of earnings: $50,000;

Future loss of earnings: $ 0.00;

Past mental anguish: $10,000;

Future mental anguish: $ 0.00;

Past loss of credit reputation: $5,000;

Future loss of credit: $ 0.00; and

Legal services for trial and appeal: $141,975.

(2) Wal–Mart (but not Rumfelt) engaged in "unlawful intentional discrimination" against McKenzie, and the following sums should be assessed as exemplary damages:

Rumfelt: $ 0.00; and

Wal–Mart: $250,000.

(5) Rumfelt (but not Wal–Mart) slandered McKenzie by publishing that he committed theft, and the following sums would fairly compensate him for his injuries:

Past mental anguish, embarrassment, and humiliation: $ 250;

Past injury to his character and reputation: $250; and

All other elements submitted: $ 0.00.

### The Trial Court's Judgment

The trial court rendered judgment on the jury's verdict that McKenzie recover the following actual damages plus prejudgment interest from Wal–Mart: $50,000 (for past loss of earnings); $10,000 (for past mental anguish); and $5,000 (for past loss of credit reputation) plus "exemplary damages" in the sum of $250,000 and attorney's fees in the sum of $141,975. The trial court also rendered judgment on the jury's verdict that McKenzie recover $500 plus prejudgment interest from Rumfelt.

### Issues Presented

Appellants state in their "Amended Brief After Remand" that these are the issues [1] which are presented for our consideration:

(1) Whether McKenzie is barred by statute from recovering exemplary damages because the controlling version of the Texas Commission on Human Rights Act, former Article 5221k,[2] does not allow recovery of exemplary damages. As this Court [the Court of Appeals] originally held, McKenzie cannot recover exemplary damages under [former Article 5221k], and he is jurisdictionally barred from relying on the Texas Labor Code to support a punitive award.

(2) Alternatively, the exemplary damage award is not supported by legally sufficient evidence, or is against the great weight and preponderance of the evidence, because there is a complete absence of malice on the part of the decision maker.

(3) The jury's award of attorney's fees must be reversed because: (1) an award of reasonable attorney's fees is discretionary with the court, not the jury; (2) the award is not supported by legally or factually sufficient evidence because it is grounded solely upon the plaintiff's contingency fee arrangement; and (3) the award is patently excessive.

1. This court previously held that Wal–Mart failed to preserve error on the complaints which are now urged in Issues Nos. 1, 5, and 6. This court ruled on the merits of the complaints stated in Issues Nos. 2, 3, 4, and 7. The Supreme Court remanded the cause for us to rule on "the merits of Wal–Mart's claims." *Wal–Mart Stores, Inc. v. McKenzie,* 997 S.W.2d at 281.

2. See former TEX.REV.CIV.STAT. art. 5221k, § 7.01, now codified in TEX. LAB. CODE ANN. § 21.252 (Vernon 1996).

(4) The judgment must be reversed and rendered on the discrimination and retaliation claims because there is no evidence, or factually insufficient evidence, that Wal–Mart committed an unlawful employment practice against McKenzie.

(5) The trial court erred in failing to grant Wal–Mart's motion for judgment notwithstanding the verdict regarding the mental anguish damages because such damages are not allowed under [former] Article 5221k and, alternatively, McKenzie failed to present legally sufficient evidence of mental anguish in accordance with *Parkway Company v. Woodruff* [901 S.W.2d 434 (Tex.1995)].

(6) Similarly, [the Court of Appeals] must reverse the damages awarded for loss of credit because such damages are not allowed under [former] Article 5221k and, alternatively, are not supported by legally or factually sufficient evidence.

(7) The trial court abused its discretion by admitting over objection the hearsay statement of Robert Cluff because the statement has no probative value and is extremely prejudicial.

### The Federal Claim

■ Footnote No. 4 of the Supreme Court opinion in this case, 997 S.W.2d at 279, makes it clear that the Supreme Court recognized that McKenzie is claiming that "compensatory and punitive damages" are available to him under the federal discrimination statute and that he either pleaded a federal claim or "it was tried by consent." [3] The Supreme Court then said:

> Because the court of appeals did not reach the merits of this issue, we leave this issue for resolution by the court of appeals on remand.

The Supreme Court also made it clear in Footnote No. 7 of its opinion, 997 S.W.2d at 280, that it was not commenting "on the merits of McKenzie's claim that the damages may be sustained under alternate legal theories."

### McKenzie's Trial Court Pleading

McKenzie alleged in his second amended original petition (the live pleading at the time of trial) that the "allegations of theft constitute a mere pretext" and that one of the true reasons for his discharge was "discrimination [because he] was an Afro–American." McKenzie also alleged that all jurisdictional prerequisites to the filing of his lawsuit had been met, and he sought to recover money damages for past and future lost wages, mental anguish in the past and future, punitive damages, damages to his credit, and other claims not material to this appeal.

Wal–Mart's special exceptions did not address these claims.[4]

McKenzie filed his complaint of discrimination with both the Federal and State Commissions. Both Commissions issued "right to sue" letters, and McKenzie had the right to proceed under either statute. Texas state courts have jurisdiction to enforce both federal and state statutes.

The Supreme Court held in *Roark v. Allen*, 633 S.W.2d 804, 809 (Tex.1982), that, when there are no special exceptions, "a petition will be construed liberally in favor of the pleader." The court cited prior Supreme Court opinions in support of its holding that:

> A petition is sufficient if it gives fair and adequate notice of the facts upon which the pleader bases his claim. The purpose of this rule is to give the opposing

---

3. McKenzie claims, in the alternative, that his federal claim was tried by consent because "Wal–Mart failed to object to the submission of evidence" which Wal–Mart now argues is not relevant to a claim under former Article 5221k. If the alternative contention were reached, it would be sustained.

4. Wal–Mart excepted to Paragraph XIV ("outrageous discharge") and Paragraph XV ("spoliation of evidence"). The trial court struck these paragraphs, and McKenzie's attorney agreed to advise Wal–Mart of the amount of damages being sought before the trial began.

party information sufficient to enable him to prepare a defense.

■ TEX.R.CIV.P. 47 provides that a pleading which sets forth a claim for relief shall contain "a short statement of the cause of action sufficient to give fair notice of the claim involved." A pleading is not required to cite the law; the court will notice and apply the proper rule. See, e.g., *Glenn Thurman, Inc. v. Moore Construction, Inc.*, 942 S.W.2d 768, 772 (Tex. App.—Tyler 1997, no writ); *Armstrong v. Rice*, 556 S.W.2d 620, 623 (Tex.Civ.App.—Texarkana 1977, writ dism'd). The facts pleaded by McKenzie show a cause of action under 42 U.S.C.A. § 2000e–5 (West 1994). Compensatory and punitive damages can be recovered for that cause of action under 42 U.S.C.A. § 1981a (West 1994). This section was added to the federal civil rights statutes in 1991, well before Wal–Mart fired McKenzie in 1992. These two sections are coordinated to avoid a double recovery for "back pay," and punitive damages are limited to $300,000 for respondents who have more than 500 employees. Consequently, former Article 5221k does not bar McKenzie's claim for compensatory and punitive damages.[5] Issue No. 1 is overruled.

### ·Evidence of Malice

■ The court reporter did not transcribe the videotaped depositions of Price, Laughlin, and French. These depositions were seen and heard by the jury, but they are not in the record furnished to this court. The Supreme Court announced the controlling rule in *Englander Co. v. Kennedy*, 428 S.W.2d 806, 807 (Tex.1968), when it said:

> When the complaint is that the evidence is factually or legally insufficient to support vital findings of fact, or that the evidence conclusively refutes vital findings, this burden cannot be discharged in the absence of a complete or an agreed statement of facts.

This appeal was filed in 1996; at that time, the burden was on appellants "to see that a sufficient record is presented to show error requiring reversal." See former TEX.R.APP.P. 50(d). The new appellate rules were not effective until September 1, 1997. See and compare TEX.R.APP.P. 34.6(c)(4). Issue No. 2 is overruled.

### Attorney's Fees

■ The trial court did not abuse its discretion in awarding the attorney's fees which had been found by the jury, and the complaint that the attorney's fees are excessive and not supported by legally or factually sufficient evidence is overruled. See *Englander Co. v. Kennedy, supra.* Moreover, the partial record contains evidence which is legally and factually sufficient to support the attorney's fees which were found by the jury and awarded by the court. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951). Issue No. 3 is overruled.

### Evidence of Unlawful Employment Practice

■ The record contains circumstantial evidence that Wal–Mart managers were involved in terminating the employment of McKenzie because of his race. While Wal–Mart denied this charge and produced evidence that McKenzie was discharged for "theft," the jury resolved this disputed fact issue by accepting McKenzie's testimony and by rejecting Wal–Mart's explanation as a pretext reason for termination. As noted above, the court reporter did not transcribe the three depositions which were seen and heard by the jury, and those depositions are not part of the record furnished to this court. Conse-

---

5. See also *Coghlan v. H.J. Heinz Company*, 851 F.Supp. 815 (N.D.Tex.1994), which McKenzie cites for the proposition that former Article 5221k does authorize punitive damages in addition to compensatory damages. TEX. LAB. CODE ANN. § 21.2585 (Vernon Supp.2000) now specifically authorizes punitive damages in addition to compensatory damages.

quently, Wal–Mart failed to show that the evidence was legally or factually insufficient to support the jury's finding of an unlawful employment practice. *Englander Co. v. Kennedy, supra.* Issue No. 4 is overruled.

### Mental Anguish and Loss of Credit

 Wal–Mart argues in Issues Nos. 5 and 6 that damages for mental anguish and loss of credit are not allowed by former Article 5221k. Wal–Mart also argues "alternatively" that the mental anguish damages and loss of credit damages are not supported by legally or factually sufficient evidence. Those damages are allowable under Section 1981a; see the reasons given in our discussion of Issue No. 1. The alternative claims are overruled because of the incomplete record. *Englander Co. v. Kennedy, supra.* Issues Nos. 5 and 6 are overruled.

### Statement of Robert Cluff

Wal–Mart argues in its final issue that the trial court abused its discretion in admitting the "hearsay" statement of Cluff that: "We finally got rid of that nigger." This statement was not hearsay. It was an operative fact. It was not offered into evidence to "prove the truth of the matter asserted." See TEX.R.CIV.EVID. 801(d). Issue No. 7 is overruled.

### This Court's Ruling

The judgment of the trial court is affirmed.