AKUNA MATATA INVESTMENTS, LIMITED, Plaintiff–Appellee

v.

TEXAS NOM LIMITED PARTNER-SHIP, doing business as Garrison Limited; Texas Mon, L.C., Defendants–Appellants

Texas Nom Limited Partnership, doing business as Garrison Limited; Texas Mon, L.C., Plaintiffs–Appellants

Akuna Matata Investments, Limited, Defendant–Appellee.

No. 14–51158.

United States Court of Appeals, Fifth Circuit.

Feb. 11, 2016.

---

Leslie Brent Farney, Farney Law Offices, Benjamin Franklin Youngblood, III (argued), Law Offices of Benjamin F. Youngblood, III, San Antonio, TX, for Plaintiff–Appellee.

Beth Elaine Watkins, Shannon Kathleen Dunn (argued), Law Office of Beth Watkins, Paul Thomas Curl, Curl & Stahl, P.C., Jason Murray Davis, Attorney, Brittany M. Weil, San Antonio, TX, for Defendant–Appellant.

Before HIGGINBOTHAM, JONES, and SMITH, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Appellee Akuna Matata brought suit in federal court seeking dissolution of an oil and gas partnership and a determination of its ownership share. The district court granted summary judgment in favor of Akuna and ordered the parties to submit

additional briefing on the value of the partnership's assets and the relative share that each partner owned. The district court ultimately ordered termination of the partnership and awarded $213,354.01 in partnership profits to Akuna, plus attorneys' fees. Finding no reversible error, we AFFIRM the district court.

## A.

The parties have been litigating for over ten years and are well acquainted with the facts of this case. But to briefly summarize, the dispute arose from an oil and gas partnership—the Gracey Ranch project. In 2002, Appellee Akuna Matata ("Akuna") sued Garrison Ltd. ("Garrison") in state court alleging claims of fraud, conversion, breach of fiduciary duty, and breach of contract.

In 2004, the state trial court determined that the parties had entered into an oral partnership to develop multiple oil and gas leases and awarded Akuna $225,309 for Garrison's breach of oral partnership and its breach of fiduciary and contractual duties. This amount was equal to Akuna's net investment in the partnership. Garrison timely appealed and the appellate court affirmed the trial court. Notably, neither of the state courts expressly dissolved the partnership.[1]

In 2005, Akuna brought the case being appealed. Garrison responded by arguing that Akuna's suit was barred by res judicata because Akuna was requesting from the federal court the same relief it had requested and received in state court. In granting summary judgement in Akuna's favor, the district court held that the state court did not dissolve the partnership and

that the rancor between the parties required a winding up of the partnership.

On appeal, Garrison raises the following issues: (1) whether Akuna's lawsuit was barred by res judicata; and (2) whether Garrison was deprived of a trial, or (3) whether Garrison was entitled to present oral testimony on the valuation and ownership issues.

## B.

■ The federal courts follow Texas law of res judicata in this Texas case. *Cerda v. 2004–EQR1 L.L.C.*, 612 F.3d 781, 786 (5th Cir.2010). Res judicata bars subsequent litigation if the earlier case involved the same parties, a full and final decision, and the same issues that are or could have been raised initially. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex.2010). The res judicata effect of a prior judgment is a question of law that we review *de novo*. *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir.2005). But a district court's factual findings on whether res judicata applies are reviewed for clear error. *Friends of Milwaukee's Rivers & Alliance for Great Lakes v. Milwaukee Metro. Sewerage Dist.*, 556 F.3d 603, 609–10 (7th Cir.2009). Like the district court, we conclude that this federal court suit to terminate the partnership, damages for breach of which had been adjudicated only nine months before the filing of this suit, still involves a different transaction.

■ There are a number of reasons why Garrison's res judicata argument fails to demonstrate that these cases involved the same transaction. The state court litigation was predicated exclusively on claims for breach of contract and fiduciary

---

1. For the purposes of this Opinion, the term dissolution will refer to the termination of the partnership.

duty. Most importantly, the state courts did not specifically decree "dissolution" or winding up of the partnership. No specific state court findings or conclusions are required by Texas law to authorize a judicial dissolution of a partnership.[2] No written state court pleadings request formal winding up of the partnership, nor did Akuna seek a partition of its share of partnership assets. The single oral comment by Akuna's counsel about winding up, which was uttered in opening argument, did not suffice to request that relief, much less to authorize the court to grant it. Neither party contended at the time of the state court judgment or on appeal that the state court rulings implicitly amounted to a decree of judicial dissolution.

In fact, no Texas cases are cited that countenanced such an implicit declaration of partnership termination by a state court. To the contrary, in finding that a partnership existed between the parties to drill multiple wells in the Gracey Ranch project, the appellate court noted that to the extent the oral partnership agreement failed to include provisions such as the duration of the agreement, the Texas Revised Partnership Act "supplies the missing terms."[3] Texas Partnership law, in turn, directs that the winding up of a partnership occurs only after certain events take place, see Tex.Rev.Civ. Stat. Ann. Art. 6132b–8.01, or after a judicial decree based on certain specific findings.[4] None of the requirements of those provisions were fulfilled, hence, it would be inconsistent with the state courts' decision to infer a winding up contrary to statute. The aim of Texas law to prescribe winding up procedures for the benefit of the partnership's creditors and the public, as well as the partners themselves, would be seriously undermined by our finding an exception for "implied dissolution" based only on inconclusive court rulings.

Moreover, the state courts' approval of "reliance damages" equivalent to Akuna's net investment in the partnership does not reduce its partnership interest to "zero" or, again by implication, substitute for findings necessary to institute a judicial dissolution. Taken together with its other findings, the court decided that although Akuna had not offered sufficient proof of lost profits from the wells, it had produced sufficient evidence at least to show that its investment had been recovered by the partnership's income because the partnership had generated substantial net profits. Reliance damages, under Texas law, may

---

2. The court must find that: (1) the economic purpose of the partnership was likely to be unreasonably frustrated; (2) another partner had engaged in conduct relating to the partnership business that made it not reasonably practicable to carry on the business in partnership with that partner; or (3) it was not otherwise reasonably practicable to carry on the partnership business in conformity with the partnership agreement. Tex.Rev.Civ. Stat. Ann. Art. 6132b–8.01(e) (West 2005).

3. "The Texas Partnership Act (the "TRPA") governs partnerships formed on or after January 1, 1994...." *Ingram v. Deere*, 288 S.W.3d 886, 894 n. 4 (Tex.2009). The Akuna–Garrison partnership was formed in 1997; thus, the TRPA governs. We note, however that the TRPA expired on January 1, 2010. *In-*

*gram,* 288 S.W.3d at 894 n. 4. The Texas Business Organizations Code now applies to all partnerships, regardless of their formation date. *Id.;* Tex.Rev.Civ. Stat. Art. 6132b–11.03.

4. The TRPA provides seven events requiring a winding up: (1) the express will of the majority-in-interest; (2) the expiration of any express term of the partnership or completion of the partnership's undertaking; (3) the occurrence of an event specified in the partnership agreement as one requiring winding up; (4) an event that makes it illegal to continue the partnership; (5) a judicial decree requiring winding up; (6) the sale of substantially all of the partnership's property; and (7) a wind up request from a partner. *Id.*

be awarded for breach of contract or fiduciary duty under these circumstances. *See Medallion Int'l Corp. v. Sylva,* No. 10–01–00243–CV, 2004 WL 1211613, at \*4 (Tex. App.–Waco 2004, no pet.). An award of reliance damages in an amount equal to a partner's contribution thus does not necessarily dissolve a partnership or result in that partner's ownership percentage's becoming zero. Tex.Rev.Stat. Ann. Art. 6132b–1.01(2) (West 2005) (a partner's capital account may consist of more than his initial contribution; it may also include profits). And because the complaint sought recovery for breach of contract and fiduciary duty, but not for rescission, there is no reason to make the leap that the court, while declaring that the parties entered into a partnership, simultaneously rescinded the parties' agreement via its measure of damages. Texas law, additionally, allowed partners to sue each other without the necessary consequence of dissolving the partnership. *See* Tex.Rev.Civ. Stat. Ann. Art. 6132b–4.06 (West 2005). There is admittedly a shade of ambiguity because the appellate court described reliance damages as being issued to "restore the status quo at the time before the contract." However, this explanation follows the court's broader reasoning (a) approving the trial court's award of "reliance damages for its reliance on the partnership agreement," and (b) noting the measure of damages for breach of a contract is just compensation for the loss actually sustained. Breach of contract damages, not rescission damages, is the focus of the discussion.[5]

Finally, we reject both parties' interpretations of the state court's boiler-plate judgment language denying all relief not specifically requested by Akuna. On one hand, contrary to Akuna's intimation, such a declaration would not entitle a plaintiff to re-litigate claims on which a court, in the first litigation, expressly denied relief. On the other hand, Garrison's argument that this language squarely precludes Akuna's instant partnership termination claim is "illogical and unpersuasive," as the district court noted: if the parties had tried by consent the issue of partnership dissolution, the court's denial of relief meant that the partnership continued, not that it automatically terminated. Our interpretation of this language, however, is that it neither proves nor disproves whether partnership termination was at issue in the first case. Because the record does not otherwise demonstrate that the question was tried by consent, we can draw no inference from the boilerplate language.

Garrison repeatedly contends that because the parties actually litigated the issues surrounding partnership termination, the state court must have decided those questions. In many ways, the parties' festering disagreements, revealed in the first

---

5. We think that the dissent is begging the question by assuming that the partnership was terminated by the state court. But whether the partnership was terminated is the very issue we have to decide. The dissent takes the position that Akuna elected its remedy by accepting a return of its partnership contribution as of 2004. The federal district court, however, awarded damages from 2004–07, a period following that judgment until the termination of the partnership. Akuna's damage award from the federal district court does not duplicate what it received before, yet it is duplication, not successive damages, that the election of remedies doctrine prevents. For the same reason, we believe that the dissent's reliance on *Foley v. Parlier,* 68 S.W.3d 870 (Tex.App.—Fort Worth 2002, no pet.), is misplaced. Moreover, *Foley* is distinguishable for other reasons. In *Foley,* the partnership had undisputedly been terminated and the plaintiff had expressly elected to recover fraud damages over breach of contract damages. *Id.* at 876–77. Here, the existence of the partnership was the crux of the litigation and Akuna was never asked to choose damages from two different recovery theories.

litigation, might have supported a court's statutory findings and a judgment requiring winding up of the partnership. But the winding up process consists of more than a showing of "irreconcilable differences." Under state law, a partnership continues until, *inter alia,* the partnership's creditors are notified and satisfied, and the remaining assets are distributed. Tex.Rev.Civ. Stat. Ann. Art. 6132b–8.06 (Westlaw 2005). Garrison did not act, following the state court judgment, as if the partnership was being wound up. Even if Akuna's interest was "bought out" by the state court judgment and it was no longer a partner, this would have meant a de facto dissolution (since there were only two partners) and Garrison would have been obliged to take the other steps necessary to reclaim the assets for itself alone. That Garrison took no such steps contradicts its position that partnership dissolution was *litigated and decided* in the state courts.

### C.

■ Garrison requested a trial, but the federal district court determined that there was no need for a trial. The court ordered the parties to submit in writing their findings and arguments concerning the value and ownership of the partnership. In its opening brief, Garrison contends that the district court improperly resolved the issues in a summary disposition because the evidence created issues of material fact. This is incorrect. The record supports that the nature of the district court proceeding approximates a trial on the merits because the court conducted a factual inquiry, assessed credibility, and weighed the evidence. In its Reply Brief, Garrison seems to agree: "[t]he judgment

here was a decision on the merits on a highly fact-specific issue, entered on a lengthy, complicated record replete with conflicting evidence...." Neither side had moved for summary judgment on the valuation and ownership issues. Moreover, the district court did not analyze the parties' written submissions under Rule 56. In sum, nothing in the record suggests that the district court conducted a summary proceeding.[6]

### D.

■ Garrison does not expressly allege that the district court erred in its factual findings, but Garrison does contend that the district court based its ruling on unreliable evidence concerning the amount and value of Akuna's partnership interest. The factual findings of a district court are reviewed for clear error. *See Nat'l Liab. Fire Ins. Co. v. R & R Marine, Inc.,* 756 F.3d 825, 830 (5th Cir.2014). While Garrison contends that Akuna's evidence is unreliable on several grounds, it apparently never moved to strike the experts' reports.

Akuna responds to each of these contentions. That the district court considered the evidence submitted by both parties, not just Akuna's accountant and petroleum engineer, is supported by the fact that the court awarded Akuna less than half of what Akuna claimed it was owed. Moreover, a review of the record does not indicate that the court's factual findings were clearly erroneous, even if conflicting evidence was presented. *See id.* (a judgment on the merits is not reversible merely because of the existence of a fact issue).

---

6. For the first time in its Reply Brief, Garrison contends that the district court abused its discretion by refusing to hear live testimony about the partnership's ownership and value. Generally, issues not raised in the appellant's opening brief are considered abandoned. *See Nissho–Iwai Co., Ltd. v. Occidental Crude Sales,* 729 F.2d 1530, 1539 n. 14 (5th Cir. 1984). We see no reason to deviate from the norm in this case.

For the foregoing reasons, we **AFFIRM**.

**PATRICK E. HIGGINBOTHAM,**
Circuit Judge, dissenting:

The parties have framed this dispute as one involving difficult questions of partnership law and res judicata. But to these eyes, this case is simpler. Under Texas law, a party suing for breach of contract "can ultimately recover for its lost profits *or* its lost investment but not both." [1] Yet the outcome of this appeal is that Akuna Matata has now achieved a result with two suits that it could not have achieved with one—it has recovered both. I respectfully dissent.

## I.

Akuna Matata invested $250,000 with Garrison Ltd. as part of a partnership to drill gas wells in Colorado County, Texas. At some point, a dispute arose over the scope of the partnership. Garrison claimed that the partnership was to drill only one well that had turned out to be a dry hole. Akuna countered that the partnership covered a series of wells, several of which were profitable. In February 2002, Akuna sued Garrison in Texas state court. Following a bench trial, the state trial court ruled in favor of Akuna, finding that a partnership existed for the development of "a number of producing wells in Colorado County, Texas." The state trial court awarded Akuna $225,309 in damages—equal to its $250,000 investment less two payments that it had received from Garrison—but denied any net profits and all other relief not expressly granted. Garrison appealed to the Texas Court of Appeals. In January 2005, the Court of Appeals affirmed the judgment and damages award. [2]

In October 2005, Akuna filed a new suit in federal court seeking dissolution of the partnership and a share of the partnership profits. Garrison responded that there was no partnership to dissolve because any relationship between the two had ended when the state trial court "refunded" Akuna's capital contribution. In October 2010, after years of litigation and the transfer of the case to a second district judge, the district court granted Akuna's motion for summary judgment. The district court rejected Garrison's argument that the partnership had already been dissolved by the state court action, reasoning that the "trial court merely awarded Plaintiff damages for Defendants' breaches" and did not invoke the procedure under Texas law for dissolving a partnership by judicial decree. The court did not pause to further parse the makeup of the damages award. Several more years of wrangling followed. In September 2013, the district court determined that Akuna owned 8.532 percent of the partnership based upon its relative capital contribution. [3] The court thus awarded Akuna 8.532 percent of the profits earned by the partnership between January 2004 and August 2007. [4]

---

1. *Amigo Broad., LP v. Spanish Broad. Sys., Inc.,* 521 F.3d 472, 485 (5th Cir.2008).

2. *Tex. Nom Ltd. P'ships v. Akuna Matata Invs., Ltd.,* No. 04–04–00447–CV, 2005 WL 159459 (Tex.Ct.App. Jan. 26, 2005).

3. The district court found that Garrison's capital contribution was $2,680,000. It then divided ($250,000) by ($250,000 + $2,680,000) to calculate Akuna's ownership interest.

4. *See Tex. Nom Ltd. P'ships,* 2005 WL 159459, at *4 ("The record reveals that the percentage of ownership of each partner in this case was based on the relative amounts of the partner's capital contribution ... and profits and any return on capital were to be based on the percentage of the partner's capital contribution.").

## II.

On appeal, Garrison argues that Akuna's federal suit was barred by res judicata because the state trial court dissolved the partnership and rejected Akuna's request for a portion of the profits. The majority concludes otherwise, holding that the state trial court did not dissolve the partnership because it "did not specifically decree 'dissolution' or winding up of the partnership." Citing Article 6132b–8.01, the majority warns that a contrary result would undermine the goal of providing clear dissolution procedures, which benefit creditors and the public alike. While I acknowledge the importance of this goal, I view the words of the Texas Court of Appeals as controlling. The Court of Appeals stated that the state trial court "elected to award Akuna Matata reliance damages for its reliance on the partnership agreement."[5] As the majority acknowledges, the court then explained that "reliance damages seek to restore *the status quo at the time before the contract.*"[6] That is, in the words of Akuna's brief to the Court of Appeals, reliance damages "seek to place the plaintiff in the same position as he would have been in if he had never entered into the contract."[7] In this case, this means that the state trial court placed Akuna and Garrison in the same position as if the partnership had never been created. This result made it unnecessary for the state courts to invoke the formal procedures for dissolving a partnership or enter a decree of dissolution—in effect, the partnership agreement had been rescinded.[8] The district court could not partition and distribute the profits of a partnership that did not exist.

Despite this language, the majority protests that the district court's approval of reliance damages in an amount equal to Akuna's net investment did not reduce its capital account to "zero" because a partner's capital account may consist of more than its initial contribution. Although I agree with this general statement of the law, the majority does not confront the detail of Akuna's capital account. Akuna's *only* contribution to the partnership was its $250,000 investment—it did not provide any other services or resources.[9] Akuna also cannot argue that its initial contribution produced profits that should be credited to its capital account; the state trial court found that it "produced no credible or reliable evidence of net profits of any partnership." This is not a case in which a partner's capital account just happened to reach zero or a partner just happened to receive an award of damages that equaled its capital contribution. To the contrary, the Court of Appeals explicitly characterized the reliance damages as "*reimbursement*" of Akuna's "substantial investment."[10] The upshot is that the majority

---

5. *Id.* at *5.

6. *Id.* (emphasis added).

7. Brief of Appellee at 46 & n. 30, *Tex. Nom Ltd. P'ships* (No. 04–04–00447–CV), 2004 WL 2863328.

8. *See Zapffe v. McElroy,* 364 S.W.2d 299, 301 (Tex.Ct.App.1963) (holding that a plaintiff suing for recovery of his capital contribution "in effect, s[ought] to rescind the alleged partnership arrangement, contending same never legally came into being due to fraudulent representations"); *cf. Volpe v. Schlobohm,* 614 S.W.2d 615, 617 (Tex.Ct.App.1981) ("A part-

nership agreement, like any other agreement or relationship, may be rescinded when proper grounds exist."); *Caplen v. Cox,* 42 Tex.Civ. App. 297, 92 S.W. 1048, 1050–51 (1906).

9. *See Tex. Nom Ltd. P'ships,* 2005 WL 159459, at *5 ("[N]either party disputes that Akuna Matata contributed $250,000 in capital to the partnership. This was Akuna Matata's *only* obligation under the parties' agreement, which it fully performed." (emphasis added)).

10. *Id.* at *6 (emphasis added).

holds that Akuna remained in a partnership with Garrison—fully entitled to a portion of the profits—even though it no longer had any of its own money at risk and continued to contribute nothing in terms of services or other resources.[11] Put another way, Akuna shared in the profits and upside of the partnership, but not the corresponding obligations and risks.[12] Texas law does not require such a result.

Indeed, Texas law forbids the outcome reached here: a double recovery.[13] In *Foley v. Parlier*, the Texas Court of Appeals considered another dispute involving a partnership relationship that "soured."[14] During trial, the court required the plaintiff "to choose between recovery for breach of contract and fraud." That is, the plaintiff had to choose whether he would affirm the partnership agreement—and recover the profits and other benefits that he was owed under that agreement—or repudiate the agreement—and get his investment back.[15] On appeal, the plaintiff argued that the trial court erred by making him choose. The Court of Appeals disagreed, holding that the plaintiff was not entitled to disaffirm the partnership agreement *and* receive the benefits of that same agreement. As the court put it, "[h]e cannot have both. [The plaintiff] cannot both 'retain all the benefits of the transaction and escape all of the obligations.'"[16] Akuna was put to a similar choice in this case. The state trial court's decision placed Akuna in a dilemma. Though the trial court

11. *Cf. Rodgers v. RAB Invs., Ltd.*, 816 S.W.2d 543, 548 (Tex.Ct.App.1991) ("The outgoing partner's right to profits ends when he receives the value of his interest."); *Hughes v. Aycock*, 598 S.W.2d 370, 376–77 (Tex.Ct.App. 1980) (explaining that—even if an outgoing partner has yet to receive the value of his interest—he can only recover "what portion of those profits are directly attributable to his capital investment").

12. Such an uneven partnership would likely qualify as a "sham" under federal tax law. *See, e.g., Chemtech Royalty Assocs., L.P. v. United States*, 766 F.3d 453, 464 (5th Cir. 2014); *Comm'r v. Williams*, 256 F.2d 152, 154 (5th Cir.1958).

13. *See Amigo Broad., LP v. Spanish Broad. Sys., Inc.*, 521 F.3d 472, 485 & n. 14 (5th Cir.2008); *Yeng v. Zou*, 407 S.W.3d 485, 491 (Tex.Ct.App.2013) ("Recovering both benefit-of-the-bargain or expectancy damages and out-of-pocket or reliance damages for the same loss is inconsistent and impermissible because it is a double recovery."); *Mays v. Pierce*, 203 S.W.3d 564, 577–78 (Tex.Ct.App. 2006).

14. 68 S.W.3d 870, 876 (Tex.Ct.App.2002).

15. *Id.* at 882, 885.

16. *Id.* at 885 (quoting *Hendon v. Glover*, 761 S.W.2d 120, 122 (Tex.Ct.App.1988)); *see also Peterson v. Barrow*, 105 S.W. 212, 213 (Tex. Civ.App.1907) ("It is manifest that she could not recover back the purchase price paid by her for a one-half interest in the business, with interest thereon from the date of such payment, and also to recover a one-half interest in the profits of the business. To hold otherwise would allow her to repudiate her contract, and at the same time receive all of the benefits that accrued to her. thereunder, and it goes without saying it that such is not the law."); Arthur Linton Corbin, 12 *Corbin on Contracts* § 1223 (rev. ed. 2002) ("The plaintiff will not be given judgment for his money back and at the same time a judgment for the value of the performance promised him.").

The Court of Appeals recognized this principle in this very case. On appeal, Garrison argued that the state trial court's award of damages was inconsistent with its finding that Akuna had not produced any evidence of lost profits. The Court of Appeals rejected this claim, explaining that the trial court had "elected" to award reliance damages "rather" than expectancy damages—which would have included lost profits. *See Tex. Nom Ltd. P'ships v. Akuna Matata Invs., Ltd.*, No. 04–04–00447–CV, 2005 WL 159459, at *5–6 (Tex. Ct.App. Jan. 26, 2005). This reasoning assumes that the state trial court had to "elect[]" *either* reliance damages or expectancy damages, not both.

found the existence of a partnership, it concluded that Akuna had not produced any reliable evidence of profits. Therefore, if Akuna had affirmed the partnership agreement and asked for expectancy damages, it would have received nothing for its efforts in state court. Akuna apparently did not like this result, so instead it defended the trial court's damages award as reliance damages intended "to restore the *status quo* before the contract."[17] In other words, Akuna chose to disaffirm the partnership agreement and get its investment back.[18] Akuna cannot now recover profits allegedly owed under that same repudiated agreement.

The majority responds that there is no inconsistency because the district court "awarded damages from 2004–07, a period following th[e state court] judgment until the termination of the partnership." This assertion, however, is incorrect both as a factual and a legal matter. The district court may have limited the damages award to the period from January 2004 to August 2007, but this was only because Akuna failed to offer acceptable proof of damages prior to 2004—not because the district court endeavored to avoid a double recovery. Moreover, the state court judgment *had not been* entered as of January 2004. The state trial court did not enter its final findings of fact and conclusions of law until June 2004; even assum-

ing the majority is otherwise correct, the district court thus awarded a double recovery, at least, for the period from January to June 2004. But the details of the timeline are ultimately irrelevant. As explained in *Foley*, the purpose of the rule against double recoveries is to prevent a plaintiff from recovering on the basis of two "inconsistent" or "alternative" remedies.[19] "Remedies are inconsistent when one of the remedies results from affirming the transaction and the other results from disaffirming the transaction."[20] Regardless of whether the relevant time periods overlap, or to what degree, the majority has allowed Akuna to recover on the basis of one remedy that disaffirms the partnership agreement and another that affirms that same agreement.

This classic formulation of contract law implements a basic common sense reality. It is illogical and inequitable for an individual to receive a full return of his investment and later claim that he is entitled to a return on that same investment, with no attendant downside risk. At Akuna's urging, the Texas Court of Appeals ordered the return of Akuna's investment. If Akuna wanted the partnership to continue, it could have conceded that it was entitled to a take-nothing judgment—but it chose to disaffirm the partnership agreement and ask for its money back.[21] The end result is that Akuna contributed nothing to its

17. Brief of Appellee, *supra,* at 46–47 (citing *Foley,* 68 S.W.3d at 884–85).

18. Indeed, Akuna arguably made this choice even earlier when it drafted the findings of fact and conclusions of law signed by the state trial court. *See* Brief of Appellants at 8, *Tex. Nom Ltd. P'ships* (No. 04–04–00447–CV), 2004 WL 2269504.

19. *See Foley,* 68 S.W.3d at 882.

20. *Id.; accord Sanderson v. Smith,* No. 12–08–00442–CV, 2010 WL 2784302, at *3 (Tex.Ct.

App. July 14, 2010); *Aegis Ins. Holding Co., L.P. v. Gaiser,* No. 04–05–00938–CV, 2007 WL 906328, at *3 (Tex.Ct.App. Mar. 28, 2007).

21. Again, an excerpt from Akuna's brief is instructive: "The trial court, finding breach of agreement and evidence of fraud, awarded a conservative measure of damages in the amount of Akuna's initial investment, less offsets. To have done anything less would have allowed Garrison to be unjustly enriched and continue in violation of the agreement the trial court found it reached with Akuna." Brief of Appellee, *supra,* at 46.

partnership with Garrison—it paid none of the expenses, it had none of its money at risk, and it contributed no services or skills—yet it now recovers over $250,000 in profits for its non-efforts. Indeed, it would have recovered much more if it had done a better job of proving damages. One may fairly ask if Akuna would have taken the same position if Garrison's efforts had produced losses rather than profits. But things have turned out differently. Through protracted litigation and incomplete legal arguments, Akuna has fallen into an investment that defies both Texas law and common sense—a free ride.

### III.

For the reasons stated above, I respectfully dissent.