# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-20132
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**
September 22, 2017

Lyle W. Cayce
Clerk

JOHN L. BLACK,

> Plaintiff - Appellee

v.

JAMES P. REDMOND,

> Defendant - Appellant

Appeals from the United States District Court
for the Southern District of Texas
USDC No. 4:14-CV-1036

Before DAVIS, CLEMENT, and COSTA, Circuit Judges.

PER CURIAM: *

A jury found for the plaintiff in this partnership dispute and awarded $200,000. The defendant seeks a new trial on the grounds that the jury's findings on causation and breach were against the great weight of the evidence. He also challenges the damages award. Because the district court did not abuse its discretion in denying the motion for a new trial, we AFFIRM.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-20132

## I.

John Black patented a unique design for wind resistant billboard frames called "Universal Flex Frames." He traveled from his home in Florida to Houston with the hopes of marketing and selling his invention. It was on this trip to Houston that Black met with James Redmond. The two had worked together before, and had been partners in both a sign business and several bars starting in the late 70s and into the 80s. The two men agreed to create Universal Flex Frames of Texas for the purpose of building, marketing, and selling Black's patented frames and splitting the profits. They entered into an oral agreement to start this venture "on a 50/50 basis." Under this agreement, Black would contribute his patent, building materials, tools, and "sweat equity" to the venture. Redmond would contribute cash, facilities, and office support through his other companies. Redmond also hired Black as a subcontractor working for a separate company owned solely by Redmond named Houston Sign and Service, Inc.

After entering into the oral agreement, Black and Redmond began setting up the business. They registered Universal Flex Frames of Texas as an unincorporated business and opened a bank account in its name. They also set up a workspace where they would construct 150 Universal Flex Frames.

About a year and a half later, Black and Redmond's relationship began to sour when Black learned that Redmond had been selling Universal Flex Frames to Houston Sign and Service, his own company, at wholesale prices. Black was concerned that the frames were being sold for only $50 more than their cost to build. Following Black's discovery that Redmond had been selling the Flex Frames to his own business, Black proposed written terms over e-mail to clarify what Black believed were the terms of the original oral partnership. Redmond says this email was sent to a defunct address and was never received.

No. 17-20132

Five days after Black sent the email attempting to clarify the partnership terms, Black and Redmond met in Redmond's office. According to Black, the meeting lasted about a minute. Black asked to talk about the prices and Redmond allegedly "kicked [him] out of the office, and told [him] to go back to Florida." The next day, Redmond sent Black an e-mail stating the partnership was over and that the inventory would remain in Redmond's possession unless Black wished to purchase the remaining frames. Black contends he was never shown financial statements for the partnership, and was never compensated for his interest in the partnership.

Following the termination of the partnership, Black filed suit alleging that the two had formed an oral partnership agreement; that Redmond had breached that agreement; and that Black was entitled to $248,714.50, half the alleged value of the assets of the partnership at the time it terminated. A jury found in Black's favor and awarded him $200,000. Redmond unsuccessfully sought a new trial.

## II.

We review a district court's ruling on a motion for new trial for abuse of discretion. *Int'l Ins. Co. v. RSR Corp.*, 426 F.3d 281, 300 (5th Cir. 2005). We give great deference to the district court ruling when it has denied the new trial motion and upheld the jury's verdict. *Int'l Ins. Co.*, 426 F.3d at 300. "New trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great weight of the evidence." *Conway v. Chem. Leaman Tank Lines, Inc.*, 610 F.2d 360, 363 (5th Cir. 1980). A jury's damage award will stand unless clearly erroneous. *Myers v. Griffin–Alexander Drilling Co.*, 910 F.2d 1252, 1255 (5th Cir. 1990).

## III.

Redmond's request for a new trial ultimately fails because the jury was entitled to make its own determinations in weighing the evidence and deciding

whose testimony was more credible. The trial featured two competing narratives and the jury was asked to pick sides in a he said/he said dispute about the nature of their oral agreement. The jury was presented with conflicting evidence, such as inventory accounting documents and e-mails about the nature of the partnership. After considering all of the evidence, the jury "could have reached a number of different conclusions, all of which would have sufficient support in this evidence to be upheld." *Conway*, 610 F.2d at 367.

## A.

One of those permissible conclusions was that a partnership agreement existed. The Texas Business Organizations Code outlines the following five factors that indicate whether a partnership has been formed: "(1) receipt or right to receive a share of profits in the business; (2) expression of an intent to be partners in the business; (3) participation or right to participate in control of the business; (4) agreement to share or actual sharing of: losses of the business, or liability for claims by third parties against the business; and (5) agreement to contribute or contributing money or property to the business. Tex. Bus. Orgs. Code Ann. § 152.052. These factors are nonexclusive and even one factor standing on its own can be strong enough to support the existence of a partnership. *See* Tex. Gov't Code Ann. § 311.005 (defining "includes" within the Texas Code to not denote "limitation or exclusive enumeration"); *Enter. Prod. Partners, L.P. v. Energy Transfer Partners, L.P.*, 2017 WL 3033312, at \*6 (Tex. App.—Dallas July 18, 2017).

The evidence allowed the jury to find that three of the five factors supported the existence of a partnership.[1] Black testified that he and Redmond had orally agreed to form a "50/50 partnership," and further stated

---

[1] No evidence was presented suggesting an agreement to share either losses or liability of the business, and the evidence presented concerning management suggests that Redmond exercised most or all of the management authority of the venture.

No. 17-20132

he was going to provide his patent, construction expertise, and uncompensated work to the partnership as part of the agreement.  Concerning profit sharing, both Black and Redmond testified that they had discussed splitting the profits from selling the Universal Flex Frames.  Furthermore, in Redmond's final email to Black, he wrote "Looks like the frame partnership is over with." There was more than sufficient evidence of a partnership to support the jury's verdict.

**B.**

The jury's determination that the partnership agreement was breached is also not against the great weight of evidence.  Black alleges that Redmond breached the agreement in numerous ways including: (1) kicking Black out of the partnership, (2) failing to split funds generated from the sales of the billboards, (3) refusing to properly account for the partnership business, (4) engaging in self-dealing by selling to his own business at wholesale prices, and (5) neglecting to deposit money into the partnership's joint account.

There is sufficient evidence to support these breach allegations.  Most importantly, there is direct evidence that Redmond unilaterally terminated the partnership agreement in January 2014.  The jury's finding of breach is further supported by Black's testimony that Redmond had been self-dealing by selling the Universal Flex Frames to his own company for $50 over cost.  The evidence also supports a finding that Black never received complete financial reports that he had requested as a partner in the business.

Redmond argues that the terms of the contract were not "sufficiently definite" to demonstrate a breach and implies that the jury was "rewrit[ing] the contract." These arguments fail because the authorities Redmond cites address the interpretation of written contracts.  *See Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 846 (Tex. 2000); *LG Ins. Mgmt. Servs., L.P. v. Leick*, 378 S.W.3d 632, 638 (Tex. App.—Dallas 2012, pet. denied).  As this jury was interpreting an oral contract, it was entitled to

5

No. 17-20132

determine the terms of the agreement, and what constitutes breach, based on "either circumstantial or direct evidence." *Turner v. NJN Cotton Co.*, 485 S.W.3d 513, 521 (Tex. App.—Eastland 2015, pet. denied). That evidence is not so strongly against the jury's finding of a breach to warrant a new trial.

### C.

Redmond's final challenge is to the damages awarded. He contends there was insufficient evidence to find the parties agreed to an equal division of the partnership assets upon dissolution, which was the basis for the award. The Texas Business Organizations Code specifies default rules for what should happen upon the termination and winding up of a partnership. Tex. Bus. Orgs. Code Ann. § 152.707. Once terminated, the partnership is expected to distribute to each partner the balance of his or her "capital account." *Id.* A "capital account" is computed by "adding the amount of a partner's original and additional contributions of cash to a partnership, the agreed value of any other property that that partner originally or additionally contributed to the partnership, and allocations of partnership profits to that partner; and subtracting the amount of distributions to that partner and allocations of partnership losses to that partner." Tex. Bus. Orgs. Code Ann. § 151.001(1) (West).

Redmond is likely correct that the mere fact that the partnership was on a "50/50 basis" did not necessarily entitle Black to a straight split of the remaining partnership assets[2] at the time of dissolution. Regardless, there is

---

[2] There is disagreement about the valuation of the remaining assets of Universal Flex Frames of Texas. As is often the case, it is not entirely clear how the jury came to its valuation considering it was lower than the damages proposed by the plaintiff. The starting point, however, is the valuation of the partnership assets. Black presented significant testimony concerning the total value of Universal Flex Frames of Texas as of November 2013, concluding that it was $497,429. The jury was entitled to give this testimony the weight and credibility it thought it deserved, and we do not find that this valuation was too speculative or conclusory.

enough evidence to support a finding that Black suffered $200,000 in damages (the award was almost $50,000 less than the 50% share he sought based on his valuation of the company). Black testified that the value of the tools, machinery, jigs, and parts he contributed had a value of $50,000. Black also testified that he valued the license to use his patent, which he granted to the partnership, at $100,000 per year. Black also argues he put significant "know-how and sweat equity" into the partnership and never received payments for his contributions to the partnership. Given this testimony, the award was not against the great weight of evidence or otherwise in error.[3]

Redmond further challenges the award on the ground that this was not an action to account for the dissolution of the partnership and thus he argues any payout of Black's capital account should be decided in a separate trial. *Akuna Matata Invs., Ltd. v. Texas Nom Ltd. P'ship.*, 814 F.3d 277 (5th Cir. 2016). This argument is untimely as it was not raised in Redmond's initial brief. For obvious reasons, our court generally will not consider an issue raised for the first time in a reply brief. *See United States v. Rodriguez*, 602 F.3d 346, 360 (5th Cir. 2010). But if this court were to consider Redmond's *Akuna* argument, it would fail. *Akuna* dealt with a question of *res judicata* when a prior trial had awarded damages but made no official determination on the dissolution of the partnership. 814 F.3d at 281. In contrast, Black was asking in a single trial for a finding of breach, and, as damages for that breach, a payout of Black's capital account.

---

[3] The computation is made particularly difficult because the agreement was oral and Redmond denies the existence of the partnership. Therefore, issues such as whether there were losses that should be subtracted from Black's account were not fully developed because it would have required Redmond acknowledge the partnership's existence and present an alternative accounting of each partner's capital account.

No. 17-20132

\* \* \*

We AFFIRM the district court's denial of Redmond's motion for a new trial.